UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-20603-CR-COOKE

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ABDUL ALANI,

Defendant.

_______________________________________/

**DEFENDANT'S MOTION FOR RECONSIDERATION OF MOTION FOR COMPASSIONATE RELEASE**

Mr. Alani respectfully submits this motion for reconsideration of his previously file motion for compassionate release based on new information. Mr. Alani relies and refers to the previously filed motion, and the details regarding the world-wide pandemic and its effect on the prison system. [DE 37]. However, in addition, he provides the following additional information in support of this renewed motion.

1. **What has happened in the prison system since the Mr. Alani made his initial request**

Essentially, the BOP reports that there are nine (9) prisoners and three (3) staff members who have contracted COVID-19 at FDC Miami. https://www.bop.gov/coronavirus/. However, there are concerns that those numbers are underreported because the BOP is under reporting them. https://www.reuters.com/article/us-health-coronavirus-usa-jails-specailr/special-report-death-sentence-the-hidden-coronavirus-toll-in-u-s-jails-and-prisons-

idUSKBN22U1V2. In addition, there are fears that judges are relying on figures that are simply inaccurate. https://www.forbes.com/sites/walterpavlo/2020/05/20/federal-judges-are-relying-on-bureau-of-prisons-covid-19-numbers-to-make-rulings/#44c6ab1912c7. It appears that the overall reporting is unrealistically low. https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#7e5c17b7ba32.

Across the country, as of July 7, 2020, the BOP has 130,692 federal inmates in BOP-managed institutions and 13,437 in community-based facilities. The BOP staff complement is approximately 36,000. There are 2,163 federal inmates and 190 BOP staff who have confirmed positive test results for COVID-19 nationwide. Currently, 5,147 inmates and 603 staff have recovered. There have been 94 federal inmate deaths and 1 BOP staff member death attributed to COVID-19 disease.

This is the advisement the BOP webpage:

> Due to the rapidly evolving nature of this public health crisis, the BOP will update the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-19 related deaths daily at 3:00 p.m. The positive test numbers are based on the most recently available confirmed lab results involving open cases from across the agency as reported by the BOP's Office of Occupational Health and Safety at 11:00 a.m. each day. BOP field sites may report additional updates throughout the day. Data is subject to change based on additional reporting.

https://www.bop.gov/coronavirus/. Clearly, this ever-changing environment makes for an extremely dangerous situation for any inmate, but it affects unreasonably those who are placed in unnecessarily dangerous conditions, in peril of losing their lives, where they are serving an extremely short sentence.

The William Bar April 3rd memorandum makes a finding that "emergency conditions will materially affect the functioning of" the prison system and as such, broadens home confinement eligibility to include "all at-risk inmates," starting with those in facilities hit hardest by the virus. Memorandum from Attorney General William P. Barr to Director of the Federal Bureau of Prisons Michael Carvajal, April 3, 2020, Office of the Attorney General, 1, https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000.

The William Barr March 26th memorandum asked the BOP to prioritize transfers of imprisoned people who have a "minimum" risk of recidivating according to PATTERN, the risk and needs assessment tool created by the First Step Act. Relatedly, categorical, offense-based exclusions prevent administrators from making the individualized determinations called for when evaluating people for transfer to home confinement. In this case, the BOP denied Mr. Alani's compassionate release based on an erroneous finding that he was a) charged with a crime of violence; and b) that his offense was a terrorist act. [Exhibit 36.4 to DE 37]. The BOP should have considered releasing him to home confinement.

The March 26 Barr Memo directs the BOP as follows:

> We also ask that you move quickly to address serious implementation issues in the newly expanded home confinement program. Reports from family members describe people having their transfers revoked at the last moment, and healthy people being quarantined in the same unit as those suspected of having COVID-19.
>
> Lastly, it is well established that recidivism drops sharply with age — and the BOP should bear this fact in mind when making release decisions about the more than 10,000 people in federal prison who are over the age of 61. The BOP could consider establishing a

> presumption of transfer for people of advanced age who, for whatever reason, do not qualify for other programs (such as compassionate release).

Mr. Alani's age and health place him in a higher risk of contracting dangerous symptoms and consequences should he contract the virus. Meanwhile, his age and lack of criminal history render his likelihood of "recidivism" nearly impossible. Not to mention that he has lost his job with the airlines and will not be able to acquire one after this conviction and therefore, is unlikely to ever be in a position to repeat the unfortunate conduct that placed him before this court.

**2. What has happened to Mr. Alani since he made his initial request**

Mr. Alani has self-reported to his family, who in turn communicated to undersigned counsel, the following:

On Mon, Jul 6, 2020 at 9:38 AM Jamila Alani <anajamilaalani@gmail.com> wrote:

Celeste,

Thank you for the update…

My dad called both my mom and I last week. He said he hasn't been feeling all too well. He's been having some congestion and headaches. The room he was in for the last few months had no AC, and one day he was banging on the door to be let out because he was feeling like collapsing from the heat and was having trouble breathing. His friend was able to move him to a new cell last week and haven't heard from my dad since then.

---

**From:** Jamila Alani <anajamilaalani@gmail.com>
**Sent:** Monday, July 6, 2020 1:21 PM
**To:** Celeste Higgins <celeste@chigginslaw.com>
**Cc:** Flor Alani <falani4@gmail.com>
**Subject:** Re: Invoice

Hi Celeste,

My father just called and didn't sound good. He was coughing badly and was having trouble breathing. His current celly has a fever and the FDC Miami officer said there was nothing he could do but watch him die (my father was crying as he was telling me this).

This is beyond terrifying. If we can arrange a call or if there's a way to contact the judge immediately please let me know. We are willing to pay what it takes. We need to get him out or get him medical attention as soon as possible.

---

On Jul 7, 2020, at 1:06 PM, Jamila Alani <anajamilaalani@gmail.com> wrote:

Hi Celeste,

Just an update - my dad just called. He had a fever and 2 men in his unit are quarantined because they tested positive for COVID.

Thanks.

Counsel does not know of any recent updates that includes two new inmates having tested positive. There would be no reason for Mr. Alani to misrepresent this information to his family. This only provides additional concerns that the BOP is not accurately representing the number of inmates who have contracted the virus in their custody.

Those of us who are not in custody can easily self-quarantine. We can wear masks if we need to go out in public (indeed are mandated to wear masks), stay 2 meters away from anyone else, drench ourselves in anti-bacterial lotions, wipes, and gels and yet still – we have a chance of contracting the virus. Mr. Alani has none of these precautions available to him. And although he is like many others in custody, he is *unlike* many others in custody who are detained following a crime of violence, a significant sentence due to drug trafficking, or even massive frauds. Unlike many

other inmates, Mr. Alani is a 60 yr-old man, serving a total of 37 months for a non-violent offense. And now, he is sick and symptomatic - but untested. He is surrounded by sick cell mates at worse, or exposed to cell mates that have now been quarantined at best. He is housed in a facility that by virtue of the number of people it houses, is not in a position to effectively protect its residents.

Mr. Alani was never "healthy" even before this pandemic. As noted earlier in DE 37, he was susceptible to bronchitis which placed him at a heightened risk. Additionally, he has a history of Vitamin D deficiency which was outlined in his PSI and for which he has been treated at FDC Miami. [PSI ]. In a recent study, the NJS reports the following:

> An inadequate supply of vitamin D has a variety of skeletal and non-skeletal effects. There is ample evidence that various non-communicable diseases (hypertension, diabetes, CVD, metabolic syndrome) are associated with low vitamin D plasma levels. These comorbidities, together with the often concomitant vitamin D deficiency, increase the risk of severe COVID-19 events. Much more attention should be paid to the importance of vitamin D status for the development and course of the disease. Particularly in the methods used to control the pandemic (lockdown), the skin's natural vitamin D synthesis is reduced when people have few opportunities to be exposed to the sun. The short half-lives of the vitamin therefore make an increasing vitamin D deficiency more likely. Specific dietary advice, moderate supplementation or fortified foods can help prevent this deficiency. In the event of hospitalisation, the status should be urgently reviewed and, if possible, improved.

Hans K. Biesalski. *Vitamin D deficiency and co-morbidities in COVID-19 patients – A fatal relationship?* NFS JOURNAL, August 2020 at Pages 10-21.(article received in May 2020 and accepted for publication in the August 2020 journal, See https://doi.org/10.1016/j.nfs.2020.06.001).

**3. Mr. Alani is still not a danger to the community**

Mr. Alani is serving a 37-month sentence for a non-violent offense. He is 60 years old, with absolutely no prior criminal history, convicted of a crime that was motivated mostly by frustration with his union and his inability to earn more money. He did not commit a crime of violence, he did not swindle any person or the government of money, and he did not perpetuate a fraud on any entity. Under ordinary circumstances, the BOP can transfer people to home confinement for "10 percent of the term of imprisonment," or six months — whichever is shorter. 18 U.S.C. § 3624(c)(2).

It is well established that recidivism drops sharply with age — and the BOP should bear this fact in mind when making release decisions about the more than 10,000 people in federal prison who are over the age of 61. The U.S. Sentencing Commission found that "offenders over sixty years old at the time of release had a recidivism rate of 16.0 percent," sharply lower than the general population. *Recidivism Among Federal Offenders: A Comprehensive Overview*, U.S. Sentencing Commission, 2016, 5, 23 & n.56, https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview.

Even though this court is accurate in noting that this was a dangerous crime, the court neglects to recognize that the crime of tampering with the aircraft was done so in a manner intentionally grounded the aircraft. It was intended to prohibit the plane from flying because the alert would not allow the aircraft to take off. That was the point of the expert who testified: the system functioned precisely how it should have.

It flagged a problem that prohibited the aircraft from taking off, thus requiring the repairmen to tend to the vehicle, thereby providing the "overtime" to the repairmen.

**4. The court can fashion a sentence that will punish Mr. Alani, keep him locked at home where he is not a danger to the community and decrease the likelihood that he contracts COVID-19 while in custody for a relatively low sentence**

In its original denial for compassionate release, the court relied (in part) on the seriousness of the crime for which Mr. Alani was convicted. Undoubtedly the crime for which he was convicted was serious as are most crimes that are charged in federal court. But the court also relied on Mr. Alani's words that he wouldn't have wanted his family in an airplane with the malfunction he caused. However, as noted by the expert who's testimony was introduced at the sentencing hearing, the mechanism that he disarmed was specifically set up to alert the flight crew so as to NOT allow the take-off of the plane. It would never have placed the passengers at risk because the plane would not have been allowed to take off. That is precisely what Mr. Alani was counting on so he would have the opportunity to work more hours.

In addition, Mr. Alani spoke truthfully but also, humbly and with remorse when he answered the court's question about having his own family on that plane. If he had not, if he had said: "my family would have been perfectly safe even if that alert had been triggered," that would hardly show remorse or regret and would correctly be viewed as disrespectful to the court, and lacking in remorse. It was clear that his motive was not to harm anyone but rather, to cause a reaction that would allow him to earn a few hours more of his salary.

"[T]hese are not normal times," given the "the risk of exposure and death from the COVID-19 pandemic." *United States v. Gonzalez*, 2020 WL 1536155, at *1 (E.D. Wa. Mar. 31, 2020). Given the extraordinary risk of serious illness or death for Mr. Alani if he contracts Covid-19, Mr. Alani respectfully requests that the Court grant his motion for compassionate release, and impose a condition of strict home confinement for the same period of time that he would have been incarcerated, so that he may self-isolate and better protect himself from the virus.

Finally, not only is the FDC Miami unable to efficiently and safely house individuals at their facility without the significant threat of a rampant infection, the current conditions that Mr. Alani is faced with are far more stringent and harsh than a the sentence this court fashioned before the pandemic. No one anticipated that Mr. Alani would ever serve in lock-down or near-lock down conditions. Those conditions are normally imposed on inmates with the highest levels of security risk. https://www.bop.gov/about/facilities/federal_prisons.jsp. As such, Mr. Alani has already served a harsher, more severe sentence than if he had served his time at his place of designation (a minimum security facility with the BOP).

While it is true that the court did not anticipate that Mr. Alani would serve only one-third of his sentence before being released, the court also could not have anticipated that Mr Alani would be in complete lock-down with sick individuals, potentially exposed to a life threatening virus with no known cure, and that those conditions could render his 37-month sentence a death sentence. If ever the saying

"desperate times call for desperate measures" were true, this is likely to be one of the most appropriate times for that conclusion.

5. **Mr. Alani has the family support, access to medical insurance and coverage and has infrastructure that would allow him to recover and serve his sentence at home**

Mr. Alani's family has been supportive throughout the criminal process and to this day. They are prepared to care for him and help him transition back into society when it becomes appropriate to do so. If he has already contracted the virus, he has medical coverage that would allow him to convalesce at home without the burden on taxpayers. If hospitalization is required, he will have the coverage to pay for that as well.

## CONCLUSION

For the reasons described in the previously filed motion, the reasons described above, the most recent developments in the BOP, and the recent developments in Mr. Alani's specific living conditions, the Court should grant Mr. Alani's motion to reduce his sentence, resentence him to time served, with three years of supervised release, and with a special condition of twenty-four months of home confinement during this supervised release term.

RESPECTFULLY SUBMITTED

CELESTE SIBLESZ HIGGINS, ESQ.
*/s/**Celeste S. Higgins***
Florida Bar No. 909718
1001 Brickell Bay Drive, Suite 1200
Miami, Florida 33131

Tel: (786) 643-8263
E-Mail: celeste@chigginslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2020, undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/**Celeste S. Higgins***